```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division

UNITED STATES OF AMERICA,     )
                              )
          v.                  )
                              )     1:07cr141 (JCC)
SANDY RAY ARTIS,              )
                              )
     Defendant.               )
```

### <u>M E M O R A N D U M   O P I N I O N</u>

This matter is before the Court on Defendant's Motion to suppress evidence. For the following reasons, the Court will deny Defendant's motion.

### I.  Background

On March 13, 2007, at approximately 3:32 pm, United States Park Police Officer Chad Gordon initiated a traffic stop of a gray Kia Rio traveling at 72 miles-per-hour in a 40 mile-per-hour zone. The vehicle contained three persons: Jasmine Lorraine Thomas, the driver, Defendant Sandy Ray Artis, the front-seat passenger, and Ms. Thomas's six-year-old son, the rear-seat passenger.

Officer Gordon walked to the driver's side of the vehicle and asked Ms. Thomas for her license and registration. Ms. Thomas provided the officer with her Virginia identification and a District of Columbia learner's permit, and stated that the car was a rental but she did not have the rental contract. After completing a computer check at his patrol vehicle, Officer Gordon determined that Ms. Thomas's privilege to drive in Virginia had

been suspended, and that the rental vehicle was not only rented to someone else but also was overdue. Gordon arrested Ms. Thomas and cited her for speeding, reckless driving, operating a vehicle after suspension, and operating a vehicle without consent of the owner. After being placed in the back of his patrol vehicle, Ms. Thomas made arrangements for her mother to pick up her son.

While this was occurring, United States Park Police Officer Patrick Miller arrived to provide back up to Officer Gordon. During the stop, Defendant was shouting out of the car's window to inquire into what was happening. Officer Miller approached Defendant's side of the car to respond, and upon doing so, smelled the odor of raw marijuana inside the vehicle. Having secured Ms. Thomas in his patrol vehicle, Officer Gordon was returning to the stopped vehicle on Mr. Artis's side. On his way back to the car, Miller informed Gordon that he detected the odor of raw marijuana inside the vehicle.

After being asked to identify himself, Defendant stated that he was Sandy Ray Artis, but produced no identification. During this exchange, Officer Gordon himself smelled the "odor of raw marijuana" from the interior of the vehicle through the passenger side window.[1] Officer Gordon asked Defendant to step

---

[1] At the hearing on the motion to suppress, an inconsistency emerged regarding these circumstances. Officer Gordon testified that it was not until he approached Mr. Artis's side of the car that he smelled the odor of raw marijuana. However, according to Officer Miller's testimony, when Miller spoke with Gordon on his way back to the vehicle, Miller stated: "You know there's marijuana in the car." To which Gordon replied, "I know," thereby

out of the car and put his hands on the roof, and Defendant complied. Officer Gordon stated that the odor of marijuana intensified upon Defendant's exit of the vehicle. Officer Gordon patted Defendant down on the outside of his pullover jacket and felt a bulge in the front waistband area. According to Officer Gordon, based upon the odor of marijuana, the plain feel of the bulge, and his training and experience, he immediately realized that the contents of the bulge were marijuana. Officer Gordon then placed Defendant under arrest and seized the bulge, wrapped in a black plastic bag, from his jacket.

At the police station, Officer Gordon opened the black plastic bag, which contained 2.5 grams of off-white chunks that field tested positive for the presence of cocaine, and approximately 30 grams of a green leafy substance in a zip-lock bag that field tested positive for the active ingredient of marijuana. After being booked and read his *Miranda* rights, Defendant voluntarily waived those rights in writing. Defendant subsequently stated that he was given the bag by someone named "Paul" and was told to go make some money. Defendant also stated that, when they were stopped, he was going to Paul's to "cook some shit up."

---

indicating that Gordon had smelled marijuana during his interaction with Ms. Thomas upon first approach of the car, contrary to Gordon's testimony that it was not detected until after he arrested Thomas and approached Artis.

Defendant was charged with conspiracy to possess cocaine base with the intent to distribute and possession of marijuana.  Defendant moves this Court to suppress drug evidence seized from his person as well as statements made after his arrest.  Defendant argues that the drug evidence was obtained by an unreasonable seizure in violation of the Fourth Amendment, and that the statements were made in violation of *Miranda*.  These issues are currently before the Court.

## II.  Analysis

A.  The drug evidence seized from Mr. Artis's person

With respect to the drug evidence seized from Mr. Artis, the legal inquiry begins with the Fourth Amendment, which provides that people are "to be secure in their persons . . . against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause."  *U.S. Const. amend. IV.* Defendant argues that he was impermissibly detained, or "seized," and thus, the drug evidence that was subsequently discovered should be suppressed.

It is well-settled that a police officer who observes a traffic violation may conduct a traffic stop of the vehicle without violating the Fourth Amendment.  *Whren v. United States,* 517 U.S. 806, 810 (1996).  Defendant does not dispute that the car was lawfully stopped, but instead argues that Officer Gordon's "investigation" by approaching the passenger side of the

4

vehicle was an impermissible detention.  The Court agrees with Defendant that no reasonable person would have felt free to leave at any time prior to Officer Gordon's approach, thus constituting a detention.  However, the Court disagrees that this detention was improper.  The temporary detention of passengers in a lawfully stopped vehicle, although a "seizure" within the Fourth Amendment, is justified by the reason for stopping the driver.  *United States v. Sakyi*, 160 F.3d 164, 170 (4th Cir. 2004).  Moreover, such detention does not infringe the passengers' Fourth Amendment rights when an officer asks questions reasonably related to the stop.  *United States v. Lyton*, 161 F.3d 1168, 1170 (8th Cir. 1998).

   Officer Gordon has numerous legitimate purposes for returning to the stopped vehicle.  First, Defendant had been yelling out the window inquiring as to what happened, essentially requesting to be approached.  Second, Officer Gordon needed to assure the safety of the 6-year-old boy in the vehicle, as it would be irresponsible for the officer to leave a child in the hands of an apparent stranger after the child's mother had been arrested.  Third, Officer Gordon was legally entitled to search the car incident to Ms. Thomas's arrest.  *New York v. Belton*, 452 U.S. 454, 450 (1981).  Fourth, Officer Gordon needed to impound the rental car and arrange to tow it back to the rental agency, since no passenger had authority to operate the vehicle.  Upon

consideration of these reasons, the Court concludes that Defendant's continued detention, including Gordon's approach of the car to continue such detention, was entirely reasonable.

Since the detention and Officer Gordon's presence was reasonable, the Court must turn to the critical inquiry upon which this motion hinges, that is, whether Officer Gordon had probable cause, thereby permitting him to make a warrantless arrest. *Maryland v. Pringle*, 540 U.S. 366 (2003).[2] "Probable cause" sufficient to justify an arrest requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The burden of

---

[2] The Government downplays the importance of this inquiry by arguing, in the alternative, that even if there was no probable cause, the drugs were not seized in violation of the Fourth Amendment since they were discovered pursuant to a legal *Terry* frisk for officer safety. Under *United States v. Terry*, 392 U.S. 1, 27 (1968), Officer Gordon would have been allowed to conduct a limited pat-down for weapons for his safety and the safety of others, even without probable cause. However, although both parties unexpectedly failed to mention it during arguments, Officer Gordon admitted on cross examination that his search of defendant was <u>not</u> a pat-down for officer safety, but instead an evidentiary search:

Q:   "So, at this point you're doing a search for officer safety?"

A:   "No.  It was a search of his person."

This admission was clearly not a simple mistake in testimony, as evidenced by Officer Gordon's affirmative correction of defense counsel.  Such an admission eliminates the Government's alternative argument, leaving the only question before the Court of whether Officer Gordon's search was justified by sufficient probable cause.

demonstrating probable cause lies with the Government. *See, e.g., Recznick v. Lorain,* 393 U.S. 166, 170 (1968).

The Fourth Circuit has repeatedly held that the odor of marijuana <u>alone</u> can provide probable cause to believe marijuana is present in a particular place. *See, e.g., United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004). If an officer can localize the source of the drug odor to a person, the officer has probable cause to believe that person has committed or is committing the crime of possession of marijuana and to arrest that person. *Id*. at 659-60. Upon arrest of the suspect, a search and seizure of evidence is lawful incident to arrest. *United States v. Scheetz,* 293 F.3d 175, 184 (4th Cir. 2002). Therefore, the inquiry into whether Officer Gordon had probable cause is effectively transformed into an inquiry of whether Officer Gordon smelled the odor of marijuana, and whether that odor was sufficiently localized around Defendant.

After painstakingly reviewing the evidence and relevant testimony, the decision is admittedly difficult. In evidence, the Court has the testimony of two United States Park Police Officers' that they smelled marijuana from the car, and that smell got stronger as Defendant stepped outside of the car. This testimony alone is sufficient to find probable cause, granted one important conclusion--that the Court finds this testimony credible. Militating against such a finding of

credibility are the following two observations: First and most significant, the marijuana seized from Defendant was sealed inside a zip-lock bag, inside another sealed plastic bag, and inside the Defendant's thick sweatshirt. Notably, the testimony at the hearing is that these bags contained no holes through which odor could more easily escape. Whether the odor of <u>raw</u> marijuana could penetrate two plastic bags and a thick sweatshirt so strongly as to be detected outside of the car gives the Court some hesitation. Unfortunately, neither Government nor Defendant introduced any expert testimony on the subject, which would have undoubtedly aided the Court in its decision. In addition, Officer Gordon's testimony was not necessarily a beacon of credibility, judging from the lack of certainty in his answers, as well as his tone of voice, inflection, and cadence.

     Nevertheless, the Court is given significant reassurance by the testimony of Officer Miller, who provided meaningful corroboration to Officer Gordon's testimony. His detailed account of the stop, the interactions of the officers with Ms. Thomas and Mr. Artis, and the circumstances surrounding the arrest sufficiently align with Mr. Gordon's account of the same. Taking these two stories together, although not perfectly parallel (as separate accounts rarely are), convince the Court that the officers' testimony is worthy of credence.

Finding the officers' testimony credible, the Court is persuaded that Officers Gordon and Miller detected the odor of marijuana emanating from the vicinity of Defendant. Moreover, that source could be particularized by the fact that the smell intensified upon Defendant's exit of the vehicle, and the reasonable inference that a six-year-old boy is less likely to be in possession of marijuana. Under the guidance of *United States v. Humphries*, the strong odor of marijuana, when localized to Defendant, was sufficient to establish probable cause justifying arrest. Since the arrest was justified, then so was the search incident to that arrest, revealing the drug evidence that Defendant seeks to suppress today. With sufficient probable cause, the arrest and search were not in violation Defendant's Fourth Amendment rights, and therefore, Defendant's motion will be denied.

### B.  Defendant's Inculpatory Statements

The Court will also not suppress any statements made by Defendant after he waived his *Miranda* rights in writing. The Court is not aware of any pre-waiver statements that the Government plans to introduce, and to the extent the Government wishes to do so, such statements will be suppressed. However, with respect to Defendant's statements made after his waiver, there is no evidence that Defendant's waiver was anything but

knowing, voluntary, and intelligent, nor does Defendant argue so. Thus, there is no basis for suppression.

### III.  Conclusion

For the foregoing reasons, this Court will deny Defendant's Motion to Suppress in full.

An appropriate Order will issue.

June 18, 2007                              _____/s/_____
Alexandria, Virginia                              James C. Cacheris
                                         UNITED STATES DISTRICT COURT JUDGE